**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Rachael Anne Earl, | No. CV-15-01693-PHX-SMM |
| Appellant, | BK No. 2:13-BK-18751-EPB |
| v. | **ORDER** |
| Lund Cadillac LLC, et al., | |
| Appellees. | |

Appellant Rachael Anne Earl ("Debtor") appeals an Order from the United States Bankruptcy Court granting Appellees' objection to debtor's claimed homestead exemption. (Docs. 1; 8.) Appellees Lund Cadillac, Diane Mann ("Trustee"), and Wells Fargo Bank ask the Court to affirm the Bankruptcy Court's decision. (Doc. 11.) The appeal is fully briefed. (Docs. 11; 13.) For the reasons set forth below, the Court will affirm the Bankruptcy Court's decision.

**I. BACKGROUND**

On October 28, 2013, Debtor, acting pro se, filed for Chapter 13 bankruptcy relief.[1] (Bk. Doc. 1.)[2] The case was ultimately converted to a Chapter 7 on March 24, 2014, because Debtor's proposed plan was insufficient to compensate creditors. (Bk. Doc. 34.) At this time, Debtor obtained counsel to proceed with the case.

---

[1] This was Debtor's third Chapter 13 bankruptcy case since 2010. See Case Nos. 2:10-bk-05650-RJH and 2:10-bk-27333-SSC.

[2] Connotes Bankruptcy Court docket.

On her first Schedule A, Debtor listed ownership of two properties: one on Claiborne Avenue and another on Sunnyvale Avenue, both single family residences located in Gilbert, Arizona. (Bk. Doc. 20.) At the time of filing for bankruptcy, Debtor, her husband, and their four children resided in the Claiborne property. On her first Schedule C, Debtor claimed a homestead exemption to the Claiborne property. (Id.) However, Debtor did not have title to the Claiborne property as it had previously been sold in a trustee's sale. Debtor attempted to get the trustee's sale set aside, but ultimately failed. (Bk. Doc. 83.)

Debtor bought the Sunnyvale property in May 2002 and lived there with her family for a few years until they moved to the Claiborne property. Debtor retained ownership of the Sunnyvale property, and at the time she filed her petition had been renting the Sunnyvale property out to third-party tenants for over four years.

In August 2014, ten months after filing for bankruptcy, Debtor filed a notice of change of address to the Sunnyvale property. (Bk. Doc. 71.) Subsequently, Trustee filed a Notice of Trustee's Sale on the Sunnyvale property. In December 2014, before the scheduled sale date of the Sunnyvale property, Debtor amended her bankruptcy schedules and changed her homestead exemption to the Sunnyvale property. (Bk. Doc. 81.) In those amended schedules, however, Debtor still indicated that all her exempted personal property was located at the Claiborne property. (Id.) Appellee Lund Cadillac objected to the amendment. (Bk. Doc. 88.) The Bankruptcy Court held an evidentiary hearing on the matter and ultimately sustained the objection. (Bk. Doc. 125). Debtor subsequently filed the present appeal.

**II. STANDARD OF REVIEW**

A party may appeal a Bankruptcy Court's Order to the District Court if the Order is final and binding. 28 U.S.C. § 158(a). An appellant may choose between a Bankruptcy Appellate Panel, if one exists in the Circuit, and a District Court to hear its appeal. 28 U.S.C. § 158(c). Thus, this Court has appellate jurisdiction to review all final and binding Orders issued by the Bankruptcy Court. In ultimately resolving the substance of the

appeal, the Court will review the Bankruptcy Court's conclusions of law *de novo* and its findings of fact under a clearly erroneous standard. See Fed R. Bankr. P. 8013; Wegner v. Murphy (In re Wegner), 839 F.2d 533, 536 (9th Cir. 1988) (citing Pizza of Hawaii, Inc. v. Shakey's, Inc. (In re Pizza of Hawaii, Inc.), 761 F.2d 1374, 1377 (9th Cir. 1985)). In its appellate capacity, the Court is typically bound to review the evidence on record in the light most favorable to the prevailing party below. In re Jake's Granite Supplies, LLC, 442 B.R. 694, 698-99 (D. Ariz. 2010).

**III. DISCUSSION**

The distinct issue the Court must consider on appeal is whether, during administration of a debtor's bankruptcy estate, the debtor may amend her homestead exemption to a different property, and whether other circumstances could preclude such an amendment.

When she filed her amended schedules, Debtor relied on Rule 1009 of the Federal Bankruptcy Code which provides that a "schedule . . . may be amended by the debtor as a matter of course at any time before the case is closed." (Bk. Doc. 96 (citing Fed.R.Bank.P. 1009).) Debtor argued that the substitution of the Sunnyvale property is an absolute right under federal bankruptcy law. (Id.) Appellee Lund Cadillac objected to the amended exemption based on provisions found in the Arizona homestead exemption statute, A.R.S. § 33-1101, *et seq.*, as well as long established Supreme Court case law. (Bk. Doc. 88 (citing White v. Stump, 266 U.S. 310 (1924) (holding that exemptions are determined as of the date of the filing of the petition).) Appellee contended that the right to amend bankruptcy schedules is not absolute, but rather the right can be precluded by individual state laws governing exemptions. (Id.)

In denying Debtor's attempt to change her homestead exemption to the Sunnyvale property, the Bankruptcy Court relied on two guiding principles. First, "that a homestead exemption is determined as of the petition date." (Id. at 4 (citing In re Jacobson, 676 F.3d 1193 (9th Cir. 2012), and White, 266 U.S. at 310.) Second, "that a debtor may amend his or her schedules to claim or change an exemption" at any time. (Id. (citing Fed. R. Bankr. P. 1009).) The Bankruptcy Court reconciled these two principles, which are seemingly at

odds, and found that a court must "recognize any homestead exemption claimed in an amended Schedule C that could have been legitimately claimed under state law *as of the petition date*." (Id. (emphasis in the original).) Next, the Bankruptcy Court turned to the Arizona homestead statute, A.R.S. § 33-1101, which authorizes a debtor to assert a homestead exemption only in a home in which he or she resides on the bankruptcy petition filing date. (Id. at 5.) Because Debtor resided in the Claiborne property on the date she filed her petition, and showed no intentions of residing in the Sunnyvale property because she was then currently renting it out to a third party, the Bankruptcy Court ultimately held that Debtor was precluded from amending her homestead exemption to the Sunnyvale property. (Id. at 5-7.) The Bankruptcy Court found that "Debtor is not permitted to elect what amounts to a *de facto* alternative exemption" or a "second bite at the apple" after she failed to set aside the Claiborne property sale. (Id. at 6.) Thus, the Bankruptcy Court sustained Appellee's objection.

On appeal, Debtor argues that the lower court's decision rested upon too narrow of an interpretation of the relevant case law and Arizona's homestead statute. Debtor argues that she "had the absolute right to assert her homestead exemption at any time 'up to the hour of sale.'" (Doc. 8 at 16 (citing First Nat'l Bank of Mesa v. Reeves, 27 Ariz. 508, 516, 234 P. 556, 559 (1925).) Debtor cites numerous other cases that she claims stand for this proposition. See e.g., Schultz v. Mastrangelo, 333 F.2d 278 (9th Cir. 1964) (finding that Debtors could retain their homestead under Arizona law though they recorded their declaration after filing their petition in bankruptcy); In re Smith, 515 B.R. 755 (Bankr. Ariz. 2014) (holding that Debtors could sell their Arizona homestead exempted property and use the proceeds to reinvest in a residence in Utah pursuant to A.R.S. § 33-1101(c)); In re Elia, 198 B.R. 588 (Bankr. Ariz. 1996) (holding that Debtor could assert her homestead exemption in property acquired post-petition with the proceeds from her previous homestead property she sold); Rogone v. Correia, 236 Ariz. 43, 50, 335 P.3d 1122, 1129 (App. 2014) ("A Debtor may, however, declare a homestead at any time prior to sale, and may designate the property to which the exemption will apply if she owns more than one."). The Court disagrees with Debtor's assertions. Those cases analyzed

distinct issues other than the one currently before Court in this case. As such, they are not dispositive as Debtor contends. (Doc. 8 at 18.)

Although the Court must review the Bankruptcy Court's conclusions of law *de novo*, after reviewing relevant case law and Arizona statutes the Court agrees with the lower court's findings. The Court first looks to the statute's language as the best indicator of the legislature's intent. Canon Sch. Dist. No. 50 v. W.E.S. Constr. Co, 177 Ariz. 526, 529, 869 P.2d 500, 503 (1994). "The Arizona homestead statute is not ambiguous." First Nat'l Bank of Doña Ana Cnty. v. Boyd, 378 F.Supp. 961, 964 (D. Ariz. 1974).

The applicable Arizona homestead exemption provides that:

> Any person the age of eighteen or over, married or single, who resides within the state may hold as a homestead exempt from attachment, execution and forced sale, not exceeding one hundred fifty thousand dollars in value, any one of the following . . . [t]he person's interest in real property in one compact body upon which exists a dwelling house in which the person resides.

A.R.S. § 33-1101(A). "Only one homestead exemption may be held by a married couple or a single person under this section." Id. at § 33-1101(B). Fed. R. Bankr. P. 1009 provides: "A voluntary petition, list, schedule, or statement may be amended by the debtor as a matter of course at any time before the case is closed." Id. Court approval is not required to make an amendment. In re Michael, 163 F.3d 526, 529 (9th Cir. 1998). However, the right to amend is not absolute and is subject to certain limitations, such as those found in the Arizona exemption laws. It has long been established that "[u]nder the so-called 'snapshot' rule, bankruptcy exemptions are fixed at the time of the bankruptcy petition." In re Jacobson, 676 F.3d at 1199 (quoting White, 266 U.S. at 313). "It is [when] the bankruptcy proceeding is initiated, that the hands of the bankrupt and of his creditors are stayed and . . . the bankrupt's right to control and dispose of the estate terminates . . . save only as to property which is exempt." White, 266 U.S. at 313 (internal quotations omitted).

1    Taken together, the Court finds that these principles stand for the proposition that
2 in Arizona a debtor cannot amend her homestead exemption in another piece of property
3 if she was not able to legally claim a homestead exemption in that property on the
4 petition date. Or in other words, a debtor can only amend her homestead exemption post-
5 petition if on the petition date the debtor could have legally claimed an exemption for the
6 property in question.

7    Here, application of the above proposition shows that Debtor could not lawfully
8 amend her homestead exemption to the Sunnyvale property post-petition. When Debtor
9 first filed her petition on October 28, 2013, she was living with her family in the
10 Claiborne property. In her original schedules, she claimed a homestead exemption in the
11 Claiborne property. All of her belongings were kept in the Claiborne property. Debtor
12 was not residing in the Sunnyvale property, but rather was then renting it out to a third-
13 party tenant. This "snapshot" of the facts as they existed on the petition date shows that
14 Debtor only intended to reside in the Claiborne property. As such, the Court finds that
15 this is the only property she could legally claim a homestead exemption for.

16    The record shows that Debtor did not develop an intention to reside in the
17 Sunnyvale property until after she failed to get the sale of the Claiborne property set
18 aside. In fact, Debtor had not resided in the Sunnyvale property for more than four years,
19 and had technically "abandoned" it as a homestead. See A.R.S. 33-1104(A)(3) ("A
20 claimant may remove from the homestead for up to two years without an abandonment or
21 waiver of the exemption."); In re Calderon, 507 B.R. 724, 732 (9th Cir. BAP 2014) ("this
22 sentence also could be read in isolation to mean that, after two years living elsewhere,
23 debtors are deemed to have automatically abandoned their homesteads."). Debtor has
24 presented no evidence to overcome the presumption that she abandoned the Sunnyvale
25 property as her potential homestead. Therefore, based on these additional grounds, this
26 Court agrees with the Bankruptcy Court that Debtor's post-petition amendment to her
27 homestead exemption to the Sunnyvale property was ineffectual as a matter of law.

28    When viewed in their entirety, the Arizona homestead exemption laws support this

finding. Nowhere in the statutes is there express language authorizing a debtor to amend her exemption post-petition. See A.R.S. §§ 33-1101 through 33-1105. Rather, the statutes show that the legislature provided that a debtor may only claim one homestead exemption, which will persist through the remainder of the bankruptcy proceeding regardless of subsequent developments.

For example, A.R.S. § 33-1102 provides that "[i]f a person has more than one property interest to which a homestead exemption may reasonably apply, a creditor may require the person to designate which property, if any, is protected by the homestead exemption." Id. Thus, the legislature contemplated the scenario wherein a debtor had interest and could potentially claim a homestead exemption in more than one property upon filing for bankruptcy. In such an event, in order to avoid confusion and complications during the course of a bankruptcy proceeding, the statute provides a remedy whereby a creditor can force a debtor to elect one, and only one, exempted homestead property. The statute is silent on whether a debtor with multiple property interests can change her exemption post-petition.

Additionally, A.R.S. § 33-1101(C) provides that:

> The homestead exemption, not exceeding [$150,000], automatically attaches to the person's interest in identifiable cash proceeds from the voluntary or involuntary sale of the property. The homestead exemption in identifiable cash proceeds continues for eighteen months after the date of the sale of the property or until the person establishes a new homestead with the proceeds, whichever period is shorter. *Only one homestead exemption at a time may be held by a person under this section*.

Id. (emphasis added). Again, Arizona law addresses another likely scenario: a debtor selling her exempted homestead post-petition. The statute provides that a debtor must reinvest the proceeds in a new residence within eighteen months or risk forfeiture. Id. By requiring a debtor to reinvest the proceeds in what will become the new exempted homestead, the statute expressly prohibits a debtor from selling an exempted homestead, pocketing the proceeds, and then claiming a new exemption in another piece of property.

Although the homestead statutes should be liberally construed to effect their

purpose of protecting the homeowner from the forced sale of her home, the homestead statutes simply do not allow for a debtor to amend her homestead exemption to a property she could not properly claim as a homestead on the petition date. See Matcha v. Winn, 131 Ariz. 115, 117, 638 P.2d 1361, 1363 (App. 1981). Thus, after reviewing the Bankruptcy Court's findings of fact for clear error and findings of law *de novo*, the Court affirms the Bankruptcy Court's decision to sustain Appellee's objection.

## IV. CONCLUSION

Accordingly, based on the foregoing,

**IT IS HEREBY ORDERED AFFIRMING** the Bankruptcy Court's Order in favor of Appellees. (Doc. 1.)

**IT IS FURTHER ORDERED** that the Clerk of Court shall forward a copy of this Order to the Chambers of U.S. Bankruptcy Judge Eddward P. Ballinger, U.S. Bankruptcy Court for the District of Arizona, 230 N. First Avenue, Phoenix, AZ 85003.

**IT IS FURTHER ORDERED** that the Clerk of Court shall terminate and remand this case to the Bankruptcy Court for further proceedings.

Dated this 4th day of August, 2016.

Honorable Stephen M. McNamee
Senior United States District Judge